**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ED LOYDE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-02049-SHL-atc |
| | ) | |
| KEVIN GENOVESE, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING MOTION TO AMEND PETITION,
DENYING PETITION PURSUANT TO 28 U.S.C. § 2254, DENYING A CERTIFICATE
OF APPEALABILITY, CERTIFYING THAT AN APPEAL
WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED
IN FORMA PAUPERIS ON APPEAL**

Before the Court are Ed Loyde's[1] Petition under 28 U.S.C. § 2254 for a writ of habeas corpus ("§ 2254 Petition," ECF No. 1) and his Motion for Leave to Supplement Petition ("Motion to Amend," ECF No. 23). NWCC Warden Kevin Genovese[2] filed an Answer to Loyd's petition (ECF No. 13) but did not respond to his Motion to Amend. For the reasons stated below, the Court **DENIES** the Motion to Amend and **DENIES** the § 2254 Petition.

---

[1] Loyde is currently incarcerated at the Northwest Correctional Complex ("NWCC") in Tiptonville, Tennessee. His Tennessee Department of Correction ("TDOC") prisoner number is 365029.

[2] The Clerk is **DIRECTED** to record the Respondent as the current NWCC Warden, Brandon Watwood, and to terminate Kevin Genovese as the respondent in this action. See Fed. R. Civ. P. 25(d); see also Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) (explaining that "in habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is being held"); Tennessee Department of Corrections, Northwest Correctional Complex, https://www.tn.gov/correction/state-prisons/state-prison-list/northwest-correctional-complex.html (last accessed Feb. 24, 2025) (stating that Brandon Watwood is the current Warden).

## I.    BACKGROUND

### A.    State Court Procedural History

On February 7, 2012, a grand jury in Shelby County, Tennessee indicted Loyde on charges of rape of a child and aggravated sexual battery after he raped an eight-year-old girl in her grandmother's home.   State v. Loyde, No. W2014–01055–CCA–R3–CD, 2015 WL 1598121, at *1–3 (Crim. App. April 6), perm app. denied (Tenn. July 21, 2015) ("Loyde I"). At the conclusion of his trial on February 28, 2014, a jury returned guilty verdicts on both charges.   (ECF No. 12-6 at PageID 703–04; see ECF No. 12-1 at PageID 115–16.)   The trial court sentenced Loyde to twenty-five years for rape of a child and ten years for aggravated sexual battery, with the sentences to run consecutively for a total of thirty-five years.   Loyde I, 2015 WL 1598121, at *1.   The judgments were entered on March 31, 2014.   (ECF No. 12-1 at PageID 117–28.)

On direct appeal, Loyde raised the sufficiency of the evidence as the sole issue.   See Loyde I, 2015 WL 1598121, at *1.   The Tennessee Court of Criminal Appeals ("TCCA") affirmed.   Id.   The Tennessee Supreme Court ("TSC") denied permission to appeal.   (ECF No. 12-13.)

After the TCCA denied his direct appeal, Petitioner filed a pro se petition and amended petition for post-conviction relief.   See Loyde v. State, No. W2018-01740-CCA-R3-PC, 2020 WL 918602, at *2 (Crim. App. Feb. 25), perm app. denied (Tenn. July 22, 2020) ("Loyde II"). On July 21, 2016, the post-conviction court appointed counsel to represent Loyde.   (ECF 12-14 at PageID 847.)   On April 18, 2018, Loyde's appointed counsel filed an Amended Petition for Post-Conviction Relief in the Shelby County Criminal Court.   (ECF No. 12-14 at PageID 867–

2

73.)   After an evidentiary hearing spanning multiple days, the post-conviction court denied relief on August 24, 2018.   (Id. at PageID 876–78.)

On post-conviction appeal, Loyde asserted that his trial counsel was ineffective for failing to object to improper questions on the State's redirect examination of the victim and for failing to object to Dr. Lakin's testimony.   Loyde II, 2020 WL 918602, at *3.   The TCCA affirmed.   Id. at *6.   On July 22, 2020, the TSC denied permission to appeal.   (ECF No. 12-25.)

On April 13, 2020, while Loyde's post-conviction petition was pending, he filed a pro se petition for writ of habeas corpus, asserting that his conviction for aggravated sexual battery violated the double jeopardy clause because it was a lesser-included offense of rape of a child. Loyde v. Phillips, No. W2020-01310-CCA-R3-HC, 2021 WL 3828326, at *3 (Crim. App. Aug. 27, 2021) ("Loyde III").   On May 8, 2020, the state habeas court denied relief because Loyde's sentence had not expired, and his judgments were not void.[3]   (ECF No. 12-26 at PageID 1465–66.)   The TCCA affirmed.   Loyde III, 2021 WL 3828326, at *4.   Loyde did not seek permission to appeal to the TSC.

**B.    Evidence At Trial**

Loyde needed a place to live in late 2010.   Loyde I, 2015 WL 1598121, at *1–3.   The victim's grandmother, G.H., allowed Loyde to temporarily move into her home and pay rent. Id.   At the time, G.H., the victim, the victim's mother and stepfather, and the victim's two brothers also lived in the home.   Id.   G.H.'s home had five bedrooms, and Loyde slept in the

---

[3] Tennessee defendants can only obtain state habeas relief based on (1) "a claim that there was a void judgment or (2) "a claim the defendant's sentence has expired."   Loyde III, 2021 WL 3828326, at *3 (citing Stephenson v. Carlton, 28 S.W.3d 910, 911 (Tenn. 2000)).

living room.  Id.  G.H. evicted Loyde at the end of April 2011, after he failed to pay his rent.
Id.

Not long after Loyde left G.H.'s residence, the victim told G.H. that Loyde had abused
her. Id.  G.H. called the police immediately.  Id.  Officer Lambert testified at trial that he
received a call on May 1, 2011, about a sexual assault at G.H's residence.  Id.  Officer Lambert
was the first officer to arrive at G.H.'s home, and he testified that the victim was nervous and
hesitant to speak to him.  Id.  However, she eventually told Officer Lambert that, on April 9,
2011, Loyde told her to go to her room, lie down, and remove her clothes.  Id.  She said that
Loyde fondled her "vaginal area and then penetrated her" for three to four minutes.  Id.  The
victim said Loyde told her not to tell anyone what happened and then left the room.  Id.  The
victim told Officer Lambert that she waited to report the incident because she was afraid of what
Loyde might do to her while he was still living there.  Id.

G.H. took the victim to the Child Advocacy Center (the "CAC") where a nurse
administered a sexual assault exam.  Id.  A CAC forensic interviewer, Letitia Cole, interviewed
the victim.  Id.  Ms. Cole testified that the victim made a full disclosure of abuse and identified
Loyde as her perpetrator.  Id.  The victim described the relationship between herself and Loyde
to Ms. Cole and used "age-appropriate vocabulary" when referring to different body parts.  Id.
She told Ms. Cole that the incident occurred "on the couch in her living room" and that Loyde
touched her breast and told her to take her clothes off and lie down on the couch.  Id.

At trial, the victim testified that the incident occurred in the living room and that Loyde
"touched her breast and penetrated her vagina with his penis."  Id.  She said that G.H. was
asleep in her room.  Id.  She also stated that her two brothers were at home, but that Loyde told
them to go outside and play, and he locked the door after they left.  Id.  The victim asked Loyde

4

if she could go outside, and Loyde told her that she could not.   Id.   Loyde asked the victim to

help him clean the couch and placed the couch cushions on the living room floor.   Id.   Loyde

then touched the victim's breast with his hand underneath her shirt and bra for "two or three

minutes."   Id.   Loyde then put the victim on her stomach on the couch cushions and told her to

pull down her pants.   Id.   She testified that she heard the buckle of a belt and a zipper and felt

Loyde on top of her and "something 'hard' between her legs."   Id.   Loyde then penetrated the

victim's vagina with his penis.   Id.   She testified that she could feel Loyde's penis inside her

vagina and that Loyde was "going up and down" with his body.   Id.   She estimated that Loyde

was on top of her for "fifteen to twenty minutes."   Id.

        The victim testified that Loyde stopped when he heard her stepfather at the door and

began trying to clean the couch while she went to her room.   Id.   When the victim went to the

bathroom, she felt a "wetness" between her legs that was not blood and had not been there

previously.   Id.   She could not testify to the exact date of the incident but said that it occurred in

April weeks before her birthday on April 21.   Id.   She testified that she told her older brother

about the incident, but she did not tell anyone else until after Loyde moved out the home.   Id.

The victim's older brother testified that Loyde lived in the home for a month or more after the

victim told him about the incident.   Id.

        When cross-examined, the victim contradicted Officer Lambert's testimony, stating that

she did not tell him that Loyde had touched her vagina with his hand or that the incident occurred

on her bedroom floor and lasted three to four minutes.   Id.   She remembered telling Ms. Cole

that the incident occurred on the couch instead of the floor.   Id.   The victim also remembered

telling both the police officers and Ms. Cole that Loyde told her to take off all her clothes, but

5

that at trial, she testified that Loyde only told her to pull her pants down and that she, in fact, did not take off all her clothes.    Id.

At trial, Dr. Karen Lakin, a medical doctor board-certified in child abuse pediatrics, testified as an expert in pediatrics and child sexual assault.    Id.    Dr. Lakin testified that the victim was sexually assaulted, and that the victim said during her examination that Loyde had "raped [her]."    Id.    During the exam, the victim said that Loyde "stuck his lower part in [her] private part" and touched her breast.    Id.    Dr. Lakin also testified that no abnormalities or evidence of injuries were found during the victim's exam, which was consistent with "ninety-five to ninety-eight percent" of pediatric sexual assault cases.    Id.    She stated that it is not uncommon to have no physical findings because children do not immediately report the assault and because the increased passage of time between the assault and the victim's examination make it less likely for a doctor to find physical evidence of sexual assault.    Id.    In cases where the examination occurs more than seventy-two hours after the assault, no attempt to collect DNA evidence is made because the procedure would be ineffective—the vaginal area is able to heal very quickly so that there would be no evidence of assault.    Id.

The jury convicted Loyde on all charges.    Id.    After challenging his conviction in the state courts, he now brings his § 2244 Petition.

## C.    Post-Conviction Proceedings

Loyde argued before the TCCA that his trial counsel was ineffective because he failed to object to leading and compound questions, questions outside the scope of cross-examination, and questions that called for speculation by witnesses.    Loyde II, 2020 WL 918602, at *6–7. However, Loyde failed to quote any specific examples of improper testimony, instead citing to trial transcript pages 267, 309, and 311.    Id. at *7.    Loyde alleged that trial counsel was

6

"particularly ineffective" during Dr. Lakin's testimony because he allowed Dr. Lakin to answer

questions that were outside her area of expertise.  Id.

Trial counsel was deceased at the time of the post-conviction evidentiary hearing, and

Loyde was the only person who testified.  Id.  He testified that appointed counsel met with him

twice per month and was "really worried" that Loyde would die in prison if he did not accept the

State's offer of an eight-year plea deal.  Id.  Loyde testified that he asked counsel for discovery

and to watch a video of the victim's forensic interview, but the discovery and video were never

provided to him.  Id.

Post-conviction counsel argued that trial counsel was "ineffective for failing to make a

number of necessary objections, which allowed improper testimony to be admitted on the

record" and that this failure resulted in prejudice to Loyde.  Id. at *10.  Post-conviction counsel

argued that the failures to object were "so blatant" that the court had to stop the testimony.  Id.

Post-conviction counsel contended that some of the testimony trial counsel failed to object to

was prejudicial in the form of the questioning, inflammatory to the jury, and outside the scope of

the expert's area of expertise which was liable to confuse the jury.  Id. at *11.

### D.    Loyde's § 2254 Petition

On January 26, 2022, Loyde filed his § 2254 Petition alleging four grounds for relief:

1. The TCCA ruling affirming the dismissal of his double jeopardy state habeas claim was void, contrary to, or involved an unreasonable application of clearly established federal law (ECF No. 1 at PageID 6);

2. Ineffective assistance of counsel for failure to object to improper questions asked by the State (id. at PageID 10);

3. Ineffective assistance of counsel for failure to object to Dr. Lakin's testimony (id. at PageID 12); and

7

      4.  The evidence was insufficient to support Petitioner's convictions (<u>id.</u> at PageID 14).

Loyde requests an evidentiary hearing, appointment of counsel, and any other relief to which he may be entitled.[4]   (<u>Id.</u> at PageID 17.)

## II.    ANALYSIS

Respondent argues that Loyde's claims are either procedurally defaulted or meritless and should be dismissed.   (ECF No. 13 at PageID 1517, 1532–50.)   The Court agrees.

### A.  Double Jeopardy Claim

In Claim One, Loyde alleges that the trial court violated the double jeopardy clause of the Fifth Amendment because his conviction for aggravated sexual assault was a lesser included offense of his conviction for rape of a child.   (ECF No. 1 at PageID 6–7.)   Respondent argues that this claim is procedurally defaulted under 28 U.S.C. § 2254(b) because Loyde failed to raise it on direct appeal or in his post-conviction proceeding, and, although he raised it in his state habeas, it was not a cognizable claim for state habeas corpus relief.   (ECF No. 13 at PageID 1532–33.)

Before a state prisoner can seek a federal writ of habeas corpus, he must exhaust his available state remedies.   <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (citing 28 U.S.C. § 2254(b)(1)).   The "exhaustion doctrine requires the petitioner to present the same claim under the same theory to the state courts before raising it on federal habeas review."   <u>Hodges v. Colson</u>, 727 F.3d 517, 529 (6th Cir. 2013) (quoting <u>Hicks v. Straub</u>, 377 F.3d 538, 552–53 (6th Cir. 2004)).   A federal habeas petitioner's claims must be presented to "one complete round of

---

[4] The Court previously denied Petitioner's motions for an evidentiary hearing and for appointment of counsel.   (ECF Nos. 8, 18, & 20.)

the State's established appellate [or collateral] review process."   O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999).

    Absent special circumstances, the exhaustion requirement is not satisfied by presenting a

claim in a procedural context in which its merits cannot be addressed.   Castille v. Peoples, 489

U.S. 346, 351 (1989).   Although Loyde raised his double jeopardy claim in his state habeas, the

TCCA did not address the merits of the claim because it was not cognizable under the habeas

corpus statute.   Loyde III, 2021 WL 3828326, at *4.   Thus, to preserve his double jeopardy

claim for federal habeas, Loyde must have presented it on direct appeal—he did not do so.   See

Jones v. State, No. M2006-00664-CCA-R3-PC, 2007 WL 1174899, at *7 (Tenn. Crim. App.

Apr. 20, 2007) (addressing the waiver of a double jeopardy claim when it could have been

presented on appeal); see Young v. State, No. E2022-00235-CCA-R3-PC, 2023 WL 4946345, at

*7 (Tenn. Crim. App. Aug. 3, 2023), appeal denied (Tenn. Dec. 20, 2023) (stating that the

double jeopardy claim was waived in post-conviction for not being raised on direct appeal).

Because the statute of limitations on the double jeopardy claim has passed, Loyde no longer has

an available state court remedy.

    If a claim has never been presented to the state courts but a state court remedy is no

longer available, then the claim is technically exhausted but procedurally barred.   Coleman v.

Thompson, 501 U.S. 722, 731–32 (1991).   A petitioner can only assert a procedurally barred

claim if he can either (1) demonstrate cause for the default and actual prejudice or (2) establish

that failure to consider the claim will result in a fundamental miscarriage of justice.   Coleman,

501 U.S. at 750.   Loyde does not argue cause and prejudice to overcome the procedural default,

and he fails to demonstrate that a refusal to review his claim on the merits will result in a

9

miscarriage of justice. Thus, Loyde's double jeopardy claim in the § 2254 Petition is unexhausted, barred by procedural default, and **DISMISSED**.

### B.    Ineffective Assistance of Counsel

In Claims Two and Three, Loyde alleges ineffective assistance of counsel for failure to (1) object to improper questions asked by the State and (2) object to Dr. Lakin's testimony. (ECF No. 1 at PageID 10, 12.)   Respondent argues that the first claim is without merit and the second is procedurally defaulted.   (ECF No. 13 at PageID 1537–45.)

Loyde raised these claims before the TCCA on post-conviction appeal.   See Loyde II, 2015 WL 1598121, at *3–6.   Where, as here, a state prisoner's claim has been adjudicated on the merits in state court, a federal court can only issue a writ if the adjudication:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).   The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt."   Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000).   "[A] run-of-the-mill state-court decision

10

applying the correct legal rule . . . to the facts of a prisoner's case" does not "fit comfortably

within § 2254(d)(1)'s 'contrary to' clause." Id. at 406.

An "unreasonable application" of federal law occurs when the state court "identifies the

correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies

that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The state court's

application of federal law must be "objectively unreasonable" for the writ to issue. Id. at 409.

It is not sufficient that the habeas court, in its independent judgment, determines that the state

court applied clearly established federal law incorrectly—"an unreasonable application of federal

law is different from an incorrect application." Renico v. Lett, 559 U.S. 766, 773 (2010) (citing

Williams, 529 U.S. at 410–11). Instead, the petitioner must show that the state court's ruling

"was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562

U.S. 86, 103 (2011).

Loyde's claim that his trial counsel rendered ineffective assistance is controlled by the

standards stated in Strickland v. Washington, 466 U.S. 668, 687 (1984), which require a showing

that "counsel's performance was deficient" and that "the deficient performance prejudiced the

defense." To establish deficient performance, the petitioner "must show that counsel's

representation fell below an objective standard of reasonableness." Id. at 687–88. A court

considering a claim of ineffective assistance must apply a "strong presumption" that counsel's

representation was within the "wide range of reasonable professional assistance." Id. at 689.

The challenger's burden is to show "that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"The question is whether an attorney's representation amounted to incompetence under

'prevailing professional norms,' not whether it deviated from best practices or most common custom." Richter, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." Richter, 562 U.S. at 104. Instead, the petitioner must show that his trial counsel's errors were "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Id.

It is very "difficult" for a petitioner to establish that a state court's application of Strickland was unreasonable under § 2254(d). Id. at 105. The standards created by Strickland and § 2254 are both "highly deferential." Id. (quoting Strickland, 466 U.S. at 689). Thus, a Strickland claim evaluated under § 2254(d)(1) is subject to a "doubly deferential judicial review." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003)). Under § 2254, "the question is not whether counsel's actions were reasonable"—instead, the "question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

The TCCA applied the Strickland analysis to evaluate Loyde's claims. See Loyde II, 2020 WL 918602, at *3–6. The Court discusses each claim below and finds that the TCCA's decisions were neither contrary to federal law nor unreasonable.

### 1.    Improper Questions Asked by The State

Loyde alleges the TCCA's denial of his first ineffective assistance of counsel claim was contrary to or involved an unreasonable application of clearly established federal law. (ECF

12

No. 1 at PageID 10–11.)   But he does not explain how the TCCA erred—he merely attaches the court's decision to his petition.   (See id.)   Thus, Loyde's claim fails to satisfy Habeas Rule 2(c)(2) because he fails to allege any facts to support this ground for relief.   However, the Court will address Loyde's federal habeas claim as the same claim that was presented and exhausted before the TCCA on post-conviction appeal.   Any other claim would be inadequately pled and procedurally defaulted.

On post-conviction appeal, Loyde alleged that his trial counsel was ineffective for failing to properly object to the victim's testimony on redirect examination as unfairly prejudicial and outside the scope of the cross examination because it allowed the State to discount inconsistencies in the victim's testimony.   Loyde II, 2020 WL 918602, at *4–6.   Respondent asserts that Loyde fails to support his claim with any evidence and that the TCCA correctly ruled that, even if counsel's performance was deficient, Petitioner failed to show that trial counsel's failure to object prejudiced the defense.   (ECF No. 13 at PageID 1540.)   The Court agrees with Respondent.

The evidence before the TCCA showed that trial counsel attacked the victim's credibility throughout the trial, pointing out the inconsistent statements between her trial testimony, her statements to the police, and her forensic interview, and that Loyde did not demonstrate prejudice from his counsel's alleged failure to object to the State's redirect questions of the victim.   Loyde II, 2020 WL 918602, at *5.   The TCCA reviewed and addressed each of Petitioner's arguments, and a review of the record is consistent with the TCCA's determination that trial counsel attacked the victim's credibility, drew attention to her inconsistent statements, and sought to elicit motives for her to be untruthful throughout his cross and recross examinations.   (See ECF No. 12-5 at PageID 478–513, 516–20.)   There is no indication that

13

counsel's failure to object during the victim's redirect examination had a substantial impact on the outcome of the case. Loyde has not met his burden to show that the TCCA's decision was contrary to or an unreasonable application of <u>Strickland</u> or based on an unreasonable determination of facts considering the evidence presented. Thus, Claim Two is **DISMISSED**.

### 2.    Dr. Lakin's Testimony

Loyde also alleges that the TCCA's denial of his ineffective assistance of counsel claim as to Dr. Lakin's testimony was contrary to or involved an unreasonable application of clearly established federal law. (ECF No. 1 at PageID 12.) Just as with his first ineffective assistance claim, Loyde provides no facts to support this allegation and merely attaches the TCCA's decision as proof. (<u>See</u> ECF No. 1 at PageID 12–13.)

Once again, Loyde's claim fails to satisfy Habeas Rule 2(c)(2) because Loyde fails to allege facts to support this ground for relief. To the extent Loyde is attempting to raise the same claim he raised before the TCCA about Dr. Lakin's testimony, this claim is properly exhausted. Any other claim about Dr. Lakin's testimony is otherwise inadequately pled and procedurally defaulted.

Before the TCCA, Loyde asserted that Dr. Lakin was not qualified to testify (1) as an expert in child maltreatment and child sexual assault, (2) about a child's ability to recall information, (3) about a study involving thirty-six teenage girls, or (4) about the victim's sexual assault examination because she did not conduct the examination herself. <u>Loyde II</u>, 2020 WL 918602, at *5. Thus, he argues that counsel should have objected to these portions of her testimony as speculation. <u>Id.</u> Respondent asserts that his habeas claim is procedurally defaulted because the issues raised on appeal before the TCCA were distinct from the claim raised in the trial court. (ECF No. 13 at PageID 1542.) Alternatively, Respondent argues that

Loyde cannot show that trial counsel's performance was deficient or that he was prejudiced.
(Id. at PageID 1543.)

The TCCA determined that the claim related to Dr. Lakin's testimony was waived
because the claim on appeal was different than the claim presented to the post-conviction court.
Loyde II, 2020 WL 918602, at *6.   The TCCA went further to assert that Loyde failed to call
Dr. Lakin as a witness in his post-conviction proceedings to challenge her qualifications as an
expert or the foundational reliability of the study she testified about at trial, concluding that
Loyde was not entitled to relief.   Id.   As a result, the TCCA found that Loyde's claim of
ineffective assistance of counsel for failure to object to Dr. Lakin's testimony was waived, and
the court declined to address its merits.   Id.   Thus, Loyde's claim is procedurally defaulted and
barred from review unless he can show that he has a "substantial claim" of ineffective assistance
of counsel.   See Atkins v. Holloway, 792 F.3d 654, 658 (6th Cir. 2015).   He has not done so.

Dr. Lakin testified that she was an assistant professor of pediatrics at the University of
Tennessee and a medical director for the LeBonheur Cares Program.   (ECF No. 12-5 at PageID
537–38.)   She discussed her experience evaluating children who suffered from physical and
sexual assault, and emotional and psychological abuse and neglect.   (ECF No. 12-5 at PageID
538–41.)   She has been board certified in child abuse pediatrics since 2011 and has been
practicing in the area since 2000, evaluating children for traumatic injuries or nonaccidental
trauma.   (Id. at PageID 539–40.)   Dr. Lakin received specialized training through the "AAP"[5]

---

[5]  It appears that the "AAP" referenced by Dr. Lakin refers to the American Academy of
Pediatrics.   See American Academy of Pediatrics, About the AAP,
https://www.aap.org/en/about-the-aap/ (last accessed Feb. 20, 2025).

in Atlanta for sexual assault, and she has provided expert testimony at trials for both the prosecution and defense in over a hundred cases.   (Id. at PageID 539–41.)

At the beginning of the States's re-direct of Dr. Lakin, trial counsel objected when the State asked if it would be normal for a child the victim's age to still be confused about an event that had occurred within the past month or weeks because Dr. Lakin was not tendered as an expert in psychology.   (Id. at PageID 573.)   The trial court ruled that, based on Dr. Lakin's training, she could give answers along those lines and allowed the questions.   (Id. at PageID 573-74.)   Trial counsel attempted to limit the scope of Dr. Lakin's testimony about the victim's truthfulness in her recross examination when he asked Dr. Lakin if she was a psychological counselor and whether her job was to determine if children were telling the truth or not.   (Id. at PageID 579.)

From the record, counsel performed reasonably in addressing Dr. Lakin's qualifications as an expert witness.   He objected to certain questions he believed to be outside the scope of her expertise, and he followed up by narrowing her testimony on cross-examination.   Loyde did not present evidence in the post-conviction proceedings to show deficient performance or prejudice from his counsel's alleged failure to object to Dr. Lakin's testimony.   Loyde II, 2020 WL 918602, at *6.   And he does not present any evidence here, either.   Thus, Loyde cannot overcome his procedural default on Claim Two because his ineffective assistance claim is not substantial.   It is **DISMISSED**.

### C.     Sufficiency of the Evidence

Loyde argues generally that the evidence is insufficient to support his convictions.   (ECF No. 1 at PageID 14.)   As before, Loyde does not present any argument or facts to support his conclusion and merely cites to the state appellate court's decisions.   (Id. at PageID 14.)   On

16

direct appeal, Loyde argued that the evidence was insufficient to sustain his conviction because there was no forensic evidence of the rape, and the victim's account of the incident was "sketchy."   Loyde I, 2015 WL 1598121, at *3–4.   Loyde contends that the TCCA's denial of this claim was contrary to or involved an unreasonable application of clearly established federal law.   (ECF No. 1 at PageID 14.)

In Jackson v. Virginia, 443 U.S. 307, 324 (1979), the Supreme Court held that a petitioner challenging the sufficiency of the evidence under § 2244 is entitled to relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."   In evaluating a Jackson claim, a federal court should review the record "in the light most favorable to the prosecution."   Id.   The State is not required "to rule out every hypothesis except that of guilt beyond a reasonable doubt."   Id. at 326.   "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id.

A challenge to the sufficiency of evidence addresses whether "the government's case was so lacking that it should not have even been submitted to the jury."   Musacchio v. United States, 577 U.S. 237, 243 (2016) (quoting Burks v. United States, 437 U.S. 1, 16 (1978)).   "[A] reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt 'beyond a reasonable doubt.'"   Id. (quoting Jackson, 443 U.S. at 314–15).   "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."   Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).

17

"Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'"   Coleman v. Johnson, 566 U.S. 650, 655 (2012) (per curiam) (quoting Jackson, 443 U.S. at 319).   Credibility determinations are reserved for the trier of fact and are "generally beyond the scope of [habeas] review."   Moreland v. Bradshaw, 699 F.3d 908, 918 (6th Cir. 2012) (quoting Brooks v. Tennessee, 626 F.3d 878, 899 (6th Cir. 2010)).

When a petitioner raises a sufficiency of evidence claim, they "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."   Coleman, 566 U.S. at 651 (2012).   First, on direct appeal, the reviewing state court defers to the trier of fact. Id.   Then, on habeas review, the federal court defers to the state court.   Id.   The federal habeas court may only overturn the state court's decision if it was "objectively unreasonable."   Id. Here, the TCCA's decision was not.

The TCCA addressed Loyde's sufficiency of the evidence claim on direct appeal and denied relief.   Loyde I, 2015 WL 1598121, at *3–4.   The TCCA correctly applied Jackson, and its decision was not contrary to Jackson.   Id.   The TCCA reviewed the elements of the crimes and the evidence presented at trial in the light most favorable to the state.   Id.   The TCCA found no error in the trial court's admission of the challenged evidence.   Id.

The TCCA determined that Loyde's arguments were based on factual issues which involved the credibility of witnesses.   Id.   It found that the "jury chose to resolve the discrepancies between the victim's pretrial statements to police and the forensic interviewer and her testimony at trial in favor of the State."   Id. at *4.   The evidence viewed in the light most favorable to the State tended to show that:

> [T]he defendant was alone with the victim in the living room of G.H.'s residence.
> The defendant reached his hand underneath the victim's shirt and bra, placing it on
> her breast.   He then placed her on the ground on couch cushions, instructed her to
> pull her pants down, and penetrated her.   The victim testified that she felt the
> defendant on top of her and felt his penis inside of her vagina.   She testified that
> when she later went to the bathroom, she felt a 'wetness' between her legs that was
> not there before the defendant penetrated her, and she testified that it was not blood.

Id.   Looking at all of the evidence, the TCCA concluded that "the evidence is sufficient to

sustain the defendant's convictions for aggravated sexual battery and rape of a child."   Id.

As evidenced by the convictions, the jury made the relevant credibility determinations

and resolved the inconsistent statements of the victim in favor of the State.   The testimony of the

victim, Dr. Lakin, G.H., Officer Lambert, the forensic interviewer Leticia Cole, the victim's

older brother, and Sergeant Byers support the jury's rational conclusion that Loyde was guilty.

Thus, the TCCA's finding that the evidence was sufficient to sustain Loyde's convictions was

not objectively unreasonable or based on an unreasonable determination of facts in light of the

evidence presented.   As a result, Claim Four is without merit and is **DISMISSED**.

## III.    CONCLUSION

Because every claim asserted by Loyde is either without merit or procedurally defaulted,

his § 2254 Petition is **DISMISSED WITH PREJUDICE**.   Judgment shall be entered for

Respondent.

## IV.    MOTION TO AMEND

Petitioner seeks to amend his § 2254 Petition to supplement his insufficiency of the

evidence claim with two more grounds for relief: (1) the indictment failed to specify the acts

alleged to have occurred and (2) the trial court did not read the indictment to the jury until after

the jury was charged at the end of trial.   (See ECF No. 23 at PageID 1569–70.)

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading once as a matter of course within twenty-one days of serving it, or within twenty-one days of service of a responsive pleading.    See Prakash v. Atladis U.S.A., Inc., No. 5:10-CV-33, 2010 WL 2653419, at *2 (N.D. Ohio July 2, 2010).    After the period for amending as a matter of course has expired, Petitioner "may amend its pleading only with the opposing party's written consent or the court's leave."    Fed. R. Civ. P. 15(a)(2).    Under Rule 15(a)(2), "the court should freely give leave when justice so requires."    Id.    The court should consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Woolbright v. Crews, No. 18-5131, 2018 WL 7247245, at *4 (6th Cir. July 9, 2018).

"A motion to amend is futile 'where a proposed amendment would not survive a motion to dismiss.'"    Banerjee v. Univ. of Tennessee, 820 F. App'x 322, 329 (6th Cir. 2020) (quoting Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div., 987 F.2d 376, 383 (6th Cir. 1993)).    Amendment of a habeas petition may be futile where (1) the petitioner's claims are time-barred and do not relate back to the original petition; (2) the claims are procedurally barred from habeas review on an independent and adequate state ground; or (3) the petitioner has failed to exhaust his new claims and has failed to demonstrate cause and prejudice or a fundamental miscarriage of justice to overcome procedural default.    See Wiedbrauk v. Lavigne, 174 F. App'x 993, 999–1000 (6th Cir. 2006); see Smith v. Brunsman, 626 F. Supp. 2d 786, 796 (S.D. Ohio 2009) (finding leave to amend futile based on procedural default).    Amendments relate back to the date of the original pleading when the amendment "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."    Mayle v. Felix, 545 U.S. 644, 656 (2005).    An amendment does not relate back when it asserts a new ground for

relief.  Hill v. Mitchell, 842 F.3d 910, 922–23 (6th Cir. 2016).   Any "'new' facts generally may differ only in specificity (not in kind) from those originally alleged."  Watkins v. Stephenson, 57 F.4th 576, 581 (6th Cir. 2023) (citing Cowan v. Stovall, 654 F.3d 815, 818 (6th Cir. 2011)).

Petitioner's new claims were not presented in the state courts, were raised for the first time in the federal habeas proceedings more than two years after the § 2254 Petition was filed, do not relate back to the § 2254 Petition, and are untimely.   Thus, amendment would be futile and the Motion to Amend is **DENIED**.

## V.     APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. Miller-El v. Cockrell, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253).   The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.   Rule 11, § 2254 Rules.   A petitioner may not take an appeal unless a circuit or district judge issues a COA.   28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.   28 U.S.C. § 2253(c)(2) & (3).   A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  Miller-El, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).   A COA does not require a showing that the appeal will succeed.   Id. at 337.   Courts should not issue a COA as a matter of course. Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005).

In this case, the claims asserted in the § 2254 Petition are either procedurally defaulted or meritless.   Because any appeal by Petitioner on the issues raised in his § 2254 Petition does not deserve attention, the Court **DENIES** a COA.

Federal Rule of Appellate Procedure 24(a)(1) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court.   See Fed. R. App. P. 24(a)(4)–(5).   In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.   It is therefore **CERTIFIED**, under Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is **DENIED**.[6]

**IT IS SO ORDERED**, this 11th day of March, 2025.

/s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, he must pay the full $605.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days of the date of entry of this Order.   See Fed. R. App. P. 24(a)(5).